**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**THE NEWSPAPER GUILD/CWA OF**
**ALBANY, TNG/CWA, AFL-CIO-CLC,**

                   **Plaintiff,**               **1:09-cv-764**
                                       **(GLS\DRH)**

                **v.**

**HEARST CORPORATION,** d/b/a
**CAPITAL NEWSPAPER DIVISION, THE**
**HEARST CORPORATION,**

                   **Defendant.**

_____

**APPEARANCES:**                       **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Barr, Camens Law Firm          BARBARA L. CAMENS, ESQ.
1025 Connecticut Avenue, N.W.   QUINN PHILBIN, ESQ.
Suite 712
Washington, DC 20036

Pozefsky, Bramley Law Firm      WILLIAM POZEFSKY, ESQ.
90 State Street
Suite 1405
Albany, NY 12207

**FOR THE DEFENDANT:**
Proskauer, Rose Law Firm        EBEN A. KRIM, ESQ.
One International Place          ELISE M. BLOOM, ESQ.
22nd Floor                     MARK W. BATTEN, ESQ.
Boston, MA 02110

**Gary L. Sharpe**
**District Court Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff The Newspaper Guild/CWA of Albany, AFL-CIO-CLC, commenced this action against defendant The Hearst Corporation, doing business as The Capital Newspaper Division, The Hearst Corporation, seeking to compel arbitration under a collective bargaining agreement. (*See* Compl., Dkt. No. 1:2.)  Pending are the Guild and Hearst's motions for summary judgment.  (Dkt. Nos. 25, 26.)  For the reasons that follow, Hearst's motion is denied, the Guild's motion is granted, and the parties are ordered to submit the matter to arbitration.

### II. Background

The Guild is a labor organization that represents a bargaining unit of Hearst's employees.  (*See* Pl. SMF ¶ 1, Dkt. No. 26:1.)  Hearst is a publisher, of among other things, the *Albany Times Union* and the *Sunday Times Union*, two newspapers of general circulation in the Albany, New York area.  (*See id.* at ¶ 2.)

On December 1, 2005, the Guild and Hearst entered into a Collective Bargaining Agreement (CBA) that was effective from August 1, 2004, to August 1, 2008.  (*See id.* at ¶ 3.)  Section 10(E) of the CBA, which outlines

2

the grievance procedure, provides that: "Any formal grievance involving the

interpretation or application of this agreement may be submitted to final

and binding arbitration."  (Krim Decl., Ex. A, CBA at 20, Dkt. No. 25:4.)

Section 13, which is titled "Dues Checkoff," states that:

> Upon an employee's voluntary written assignment, the
> Company shall deduct weekly from the salary account of such
> employee and pay to the Guild on the fifteenth (15th) day of
> each month, but in no event later than the twentieth (20th), all
> membership dues levied by the Guild for the current month....
> An employee's voluntary written assignment shall remain
> effective in accordance with the terms of such assignments.  All
> such deductions shall be made in conformity with local, state or
> federal legislation.

(*Id.* at 29.)  The CBA also includes a dues checkoff form, which reads:

> To: Capital Newspapers Division - The Hearst Corporation
>
> I hereby assign to the Newspaper Guild of Albany, NY from any
> salary earned or to be earned by me as your employee, an
> amount equal to all membership dues lawfully levied against
> me by the Guild for each calendar month following the date of
> this assignment as certified by the treasurer of the Newspaper
> Guild of Albany, NY.
>
> I hereby authorize and request you to check off and deduct
> such amounts during the month for which such dues are levied
> and the Guild so notifies you, from any salary then standing to
> my credit as your employee, and to remit the amount deducted
> to the Newspaper Guild of Albany, NY, not later than the
> twentieth (20th) day of that month.
>
> This assignment and authorization shall remain in effect until

3

revoked by me, but shall be irrevocable for a period of one (1) year from the date appearing below or until the termination of the [CBA] between yourself and the Guild whichever occurs sooner.  I further agree and direct that this assignment and authorization shall be renewed automatically and shall be irrevocable for successive periods of one (1) year each or for the period of each succeeding applicable collective agreement between yourself and the Guild, whichever period shall be shorter, unless written notice of its revocation is given by me to yourself and to the Guild by registered mail not more than thirty (30) days and not less than fifteen (15) days prior to the expiration of each period of one (1) year, or of each applicable [CBA] between yourself and the Guild, whichever occurs sooner.  Such notice of revocation shall become effective for the calendar month following the calendar month in which you receive it.

This assignment and authorization supersedes all previous agreements and authorization heretofore given to you by me in relation to my Guild membership dues.
Employee's Signature _____
Date _____

(*Id.* at 29-30.)

Prior to August 2008, the parties began negotiating for a new collective bargaining agreement.  (*See* Def. SMF ¶ 6-7, Dkt. No. 25:2.) During these negotiations, the Guild and Hearst agreed to extend the terms of the CBA by an interim agreement dated June 15, 2008.  (*See id.* at ¶ 5.) Under the interim agreement, either party was authorized to terminate the extended CBA upon thirty days' notice.  (*See id.*)

4

On March 10, 2009, acting pursuant to the interim agreement's termination clause, Hearst notified the Guild by letter that it would be terminating the CBA on April 9, 2009.  (*See* Krim Decl., Ex. B, Dkt. No. 25:5.)  In addition, Hearst notified the Guild that "[t]his shall include termination of the arbitration provisions in Section 10, and the dues checkoff provisions in Section 13." (*Id.*)  Accordingly, on April 10, 2009, Hearst stopped deducting and remitting the dues checkoff amounts to the Guild.  (*See* Pl. SMF ¶ 7, Dkt. No. 26:1.)

Shortly thereafter, on May 2, 2009, the Guild filed a formal grievance with Hearst, challenging the discontinuation of the dues checkoff and seeking resumption of dues collection and remittance of all back dues with interest.  (*See id.* at ¶ 10.)  The grievance asserted that "[t]he cancellation of the dues checkoff violates Section 13, which compels the employer to remit dues checkoff in accordance with any unrevoked dues checkoff authorization." (O'Brien Aff., Ex. 4, Dkt. No. 26:6.)  However, after failing to resolve the issue in the contractual grievance procedure, the Guild notified Hearst on May 14, 2009, of its intent to "move the issue to arbitration." (O'Brien Aff., Ex. 5, Dkt. No. 26:6; *see also* Pl. SMF ¶ 11, Dkt. No. 26:1.) On May 26, the Guild subsequently informed Hearst that it would file a

legal action to compel arbitration if Hearst did not agree to select an

arbitrator by May 29.  (*See* O'Brien Aff., Ex. 6, Dkt. No. 26:6.)  In response,

by letter dated May 27, 2009, Hearst declined to arbitrate the issue of dues

checkoff.  (*See* O'Brien Aff., Ex. 7, Dkt. No. 26:6.)

On July 2, 2009, the Guild filed the present action to compel

arbitration against Hearst.  (*See* Compl., Dkt. No. 1.)  The parties each

then moved for summary judgment on the issues of whether the dues

checkoff issue is subject to the CBA's arbitration clause and whether

Hearst was obligated to continue collecting and remitting dues to the Guild

after the expiration of the CBA.  (*See* Dkt. Nos. 25, 26.)

## III.  Standard of Review

The standard for the grant of summary judgment is well established,

and will not be repeated here.  For a full discussion of the standard, the

court refers the parties to its previous opinion in *Bain v. Town of Argyle*,

499 F. Supp.2d 192, 194-95 (N.D.N.Y. 2007).

## IV.  Discussion

"[A]rbitration is a matter of contract and a party cannot be required to

submit to arbitration any dispute which he has not agreed so to submit."

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574,

582 (1960). The duty to arbitrate "is a creature of the collective-bargaining

agreement [such] that a party cannot be compelled to arbitrate any matter

in the absence of a contractual obligation to do so." *Nolde Bros., Inc. v.*

*Local No. 358, Bakery & Confectionary Workers Union,* 430 U.S. 243, 250-

51 (1977). Yet, even where the agreement has expired, the arbitration duty

will endure if the dispute at issue is "over an obligation arguably created by

the expired agreement." *Id.* at 252. This is because an "extensive

obligation to arbitrate [a] contract ... [is] not consistent with an interpretation

that would eliminate all duty to arbitrate as of the date of expiration." *Litton*

*Fin. Printing Div. v. NLRB*, 501 U.S. 190, 204 (1991). Under this rationale,

a "failure to exclude from arbitrability contract disputes arising after

termination ... affords a basis for concluding that [the parties] intended to

arbitrate all grievances arising out of the contractual relationship." *Nolde*

*Bros.*, 430 U.S. at 255. Accordingly, "where the dispute is over a provision

of the expired agreement," a presumption in favor of postexpiration

arbitration arises which can only "be negated expressly or by clear

implication." *Id.* Thus, "[a]n order to arbitrate the particular grievance

should not be denied unless it may be said with positive assurance that the

arbitration clause is not susceptible to an interpretation that covers the

7

asserted dispute." *Warrior & Gulf Navigation Co.*, 363 U.S. at 582-83; *see also United Parcel Serv., Inc. v. Union de Tronquistas de P.R.*, 426 F.3d 470, 472-73 (1st Cir. 2005); *CPR (USA) Inc. v. Spray*, 187 F.3d 245, 256 (2d Cir. 1999).

"[T]he issue of arbitrability is undeniably one for judicial determination." *Chi. Pneumatic Tool Co. v. Smith*, 890 F. Supp. 100, 112 (N.D.N.Y. 1995). A dispute that arises after expiration of an agreement will be subject to the agreement's arbitration clause "only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Litton*, 501 U.S. at 205-06. Under this test, where a collective bargaining agreement contains a sufficiently broad arbitration clause and contemplates the continued effectiveness of a dues checkoff provision beyond the agreement's expiration, a postexpiration grievance involving the dues checkoff dispute can be subject to arbitration. *See Providence Journal Co. v. Providence Newspaper Guild*, 308 F.3d 129, 132 (1st Cir. 2002); *cf. Cumberland Typographical Union No. 244 v. The Times &*

*Alleganian Co.*, 943 F.2d 401, 404-05 (4th Cir. 1991) (finding arbitrability where lifetime job guarantee was covered by broad arbitration clause and where expired agreement contemplated that the job guarantee right would continue after expiration).

Here, at the threshold, there is no question that, prior to expiration, the issue of dues checkoff was governed by the CBA. It is equally clear that the Hearst's obligation to collect and remit dues is a contractual one and not one that arises solely under the statutory framework of the National Labor Relations Act or the Labor Management Relations Act. Thus, the principal dispute is whether the parties' intentions, as manifested in the language of the CBA, were for the dues checkoff obligation to survive the CBA's expiration.

Upon review of the relevant language of the CBA, the court concludes that the CBA arguably contemplates extension of Hearst's dues checkoff obligations beyond expiration of the CBA. First, section 13 stipulates that "[a]n employee's voluntary written assignment *shall remain effective* in accordance with the terms of such assignments." (Krim Decl., CBA at 29, Ex. A, Dkt. No. 25:4 (emphasis added).) The "shall remain effective" language is potentially continuous in nature. Second, the CBA

makes the execution of the assignment contingent on the terms of the

assignment form.  Accordingly, the language of the assignment form

becomes equally crucial, as it gives further color to the CBA.[1]  The form

provides that the "assignment and authorization shall remain in effect until"

the employee revokes it.  (*See id.* at 29-30.)  Notably, the assignment form

does set initial limitation periods during which an assignment remains

irrevocable.  In particular, the form stipulates that the "assignment and

authorization ... shall be irrevocable for a period of one (1) year from the

date appearing below or until the termination of the [CBA] between [Hearst]

and the Guild whichever occurs sooner."  (*Id.*)  However, the court is

unable to find that this language authorizes Hearst to unilaterally revoke

---

[1]While the Sixth Circuit's analysis in *United Bhd. of Carpenters & Joiners of Am., Dresden Local 267 v. Ohio Carpenters Health & Welfare Fund*, 926 F.2d 550, 557 (6th Cir. 1991), of the legal character of the dues checkoff assignment is informative, it does not aid in addressing or disposing of the issues currently before the court.  Similarly, Judge Henry Friendly's opinion in *NLRB v. Penn Cork & Closures, Inc.*, 376 F.2d 52 (2d Cir. 1967), is also informative but of minimal relevance here.  Hearst relies on *Penn Cork* to assert an inextricable connection between the duration of a union security clause and a dues checkoff agreement. (*See* Def. Reply Mem. of Law at 7 & n.3, Dkt. No. 30.)  Yet, the court is more affected by the central holding of Judge Friendly's opinion, which suggests that an employee's assignment and subsequent revocation of dues checkoff or resignation from the union should be accorded significant and, where appropriate, controlling weight.  *See Penn Cork*, 376 F.2d at 55-56; *see also id.* at 55 (noting that dues checkoff assignments may be valid even in the absence of a union security clause); *Lowell Corrugated Container Corp.*, 177 N.L.R.B. 169, 173 (1969) (discussing the implications of *Penn Cork* and finding that employer *may* continue to honor an unrevoked dues checkoff authorization after the agreement has expired).

the assignments and cancel collection and remittance.[2]  Importantly, there

are no parallel time restrictions on the duration and effectiveness of the

assignment.  In other words, the form does not explicitly or implicitly set an

expiration date or limitation period for the dues checkoff assignment.[3]

Lastly, the dues checkoff form establishes the automatic renewal of the

assignment and authorization, which further bolsters the assignment's

---

[2]It is noteworthy, as even Hearst points out, (*see* Def. Reply Mem. of Law at 8, Dkt. No. 30), that the language limiting revocation is in the assignment form because it is legally mandated by the Labor Management Relations Act.  *See* 29 U.S.C. § 186(c)(4) (allowing employer to deduct money from employees' wages and remit to the labor organization for membership dues as long as "the employer has received from each employee ... a written assignment which shall not be irrevocable for a period of more than one year, or beyond the termination date of the applicable collective agreement, whichever occurs sooner").  Thus, because "such language is required by the [Act] and is distinguishable from enforceable contractual obligations," *Tillery v. The Washington Post*, 232 Fed. Appx. 1, at *2 (D.C. Cir. Apr. 16, 2007) (citation omitted), it has minimal applicability to the court's analysis.  Accordingly, this language in and of itself cannot be interpreted as restricting or limiting Hearst's dues checkoff obligations or the Guild's dues checkoff rights.

[3]This lack of language linking the duration of the dues checkoff to the duration of the CBA can be contrasted with the language evaluated in *Local Joint Executive Bd. of Las Vegas v. NLRB*, 540 F.3d 1072 (9th Cir. 2008), which provided that the dues checkoff "shall be continued in effect for the term of this Agreement" and that the employer would deduct membership dues "during the term of the Agreement."  540 F.3d at 1075-76.  Although *Local Joint Executive Bd. of Las Vegas* involved statutory rather than contractual obligations—and is accordingly of no consequence here—it is interesting that the Ninth Circuit ultimately held that the durational clauses did not amount to a clear waiver of the union's statutory right to protection from the employer's unilateral termination of the dues checkoff.  *See id.* at 1082 (vacating and remanding *Hacienda Hotel, Inc., Gaming Corp.*, 351 N.L.R.B. 504 (2007)); *cf. Cauthorne Trucking v. Drivers, Chauffers & Helpers Local Union 639*, 256 N.L.R.B. 721, 722 (1981) (finding waiver where agreement stipulated that "at the expiration of any particular collective bargaining agreement ... any [of the employer's] obligation under this Pension Trust Agreement *shall terminate* unless, in a new collective bargaining agreement, such obligation shall be continued" (emphasis added)); *Bethlehem Steel Co.*, 136 N.L.R.B. 1500, 1502 (1962) (finding employer's dues checkoff obligations terminated when agreement terminated where language provided that "the Company will ... deduct from the pay of such Employee ... his periodic Union dues ... *so long as this Agreement shall remain in effect*" (emphasis added)).

11

potential perpetuity.  (*See id.*)

Therefore, in light of the sweeping breadth of the arbitration clause,

the nature of the dues checkoff clause, and Hearst's failure to identify a

limitation on the continued viability of the dues checkoff entitlement, the

court concludes that the CBA contemplates postexpiration arbitration of the

issue of whether the Guild is entitled to continued collection and remittance

of dues.[4]  Accordingly, because the CBA evidences an intent to arbitrate

---

[4]The court is at a loss as to Hearst's interpretation and application of certain decisions, including that of the Seventh Circuit in *Office & Prof'l Employees Int'l Union, Local 95 v. Wood County Tel. Co.*, 408 F.3d 314 (7th Cir. 2005).  Contrary to Hearst's assertion that the court there denied arbitration, the Seventh Circuit specifically directed the district court to order the parties into arbitration.  *See id.* at 318.  Furthermore, the central issue in *Office & Prof'l Employees Int'l Union* was whether to compel arbitration regarding grievances filed by the union based on the firing of a member of the bargaining unit and the disciplining of another.  *See id.* at 315.  Most importantly, though, the court's recognition of the principle that an employer's continued recognition of its dues checkoff obligations after expiration acts as an acknowledgment that the collective bargaining agreement remains in force, does not imply that the opposite is equally true.  *See id.*  Rather, where it is contemplated by the agreement and further reinforced by the employees' personal consent, dues checkoff obligations can outlast the agreement.  *See id.* at 317.

As to Hearst's reliance on *Mount Ararat Cemetery v. Cemetery Workers & Greens Attendants Union*, 975 F. Supp. 445 (E.D.N.Y. 1997), the court declines to follow this holding to the extent it is applicable.  *Mount Ararat Cemetery* appears to rely on a misinterpretation of *Litton*.  In discussing the various situations in which arbitration should be compelled, the *Litton* court entertained the notion that "of course, *if* a collective-bargaining agreement provides in explicit terms that certain benefits continue after the agreement's expiration, disputes as to such continuing benefits may be found to arise under the agreement, and so become subject to the contract's arbitration provisions."  *Litton*, 501 U.S. at 207-08 (citation omitted and emphasis added).  Yet, the court in *Mount Ararat Cemetery* takes that language and concludes that "post-expiration disputes as to contract-based benefits should be subject to arbitration *only when* the 'collective-bargaining agreement provides in explicit terms that [those] benefits continue after the agreement's expiration.'"  *Mount Ararat Cemetery*, 975 F. Supp. at 448 (quoting *Litton*) (emphasis added).  The court is unable to find that the *Litton* opinion compels such a rigid conclusion.

Likewise, the court is not persuaded by the application of *Litton* in *Cadillac Indus., Inc. v. Amalgamated Clothing & Textile Workers Union*, 775 F. Supp. 30 (D. P.R. 1991), another

issues relating to dues checkoff obligations even after expiration of the

CBA, the court orders the parties to arbitration.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Hearst's motion for summary judgment (Dkt. No. 25)

is **DENIED**; and it is further

**ORDERED** that the Guild's motion for summary judgment (Dkt. No.

26) is **GRANTED**; and it is further

**ORDERED** that the parties are to submit the dues checkoff matter to

arbitration pursuant to section 13 of the December 1, 2005 Collective

Bargaining Agreement; and it is further

**ORDERED** that the action is **DISMISSED** without prejudice; and it is

---

case relied upon by Hearst.  *Cadillac Industries* interprets the *Litton* court's suggestion that "parties who favor labor arbitration during the term of a contract [and] also desire it to resolve postexpiration disputes ... can consent to that arrangement by explicit agreement" as a reversal of the *Nolde* presumption of arbitrability in the context of a postexpiration grievance. *See Cadillac Indus., Inc.*, 775 F. Supp. at 32 n.3.  This court is disinclined to interpret that section of the *Litton* decision as a complete overruling of *Nolde*'s presumption of arbitrability. Rather, the section of language in *Litton* merely offers another option to parties wishing to further protect their interest in postexpiration arbitration.

Lastly, the court is confident that its holding here is not inconsistent with *Local Union 813, Int'l Bhd. of Teamsters v. Waste Mgmt. of N.Y., LLC*, 469 F. Supp.2d 80 (E.D.N.Y. 2007). There, the court opined that when evaluating whether the disputed contractual right survives the agreement's expiration, the presumption of arbitrability becomes "immaterial" because "if 'normal principles [of contract interpretation]' demonstrate that the parties intended to arbitrate the issue, it will be arbitrated, whereas if 'normal principles' demonstrate a lack of such intention, then the presumption never enters the analysis." *Waste Mgmt. of N.Y., LLC*, 469 F. Supp.2d at 84.

further

      **ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

June 11, 2010
Albany, New York

                                United States District Court Judge

14